**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANGELA PRENTKIEWICZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-00077-CWB** |
| | ) | |
| **KILOLO KIJAKAZI,[1]** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

## I.    Introduction and Administrative Proceedings

Angela J. Prentkiewicz ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act on December 7, 2018 wherein she alleged disability onset as of May 1, 2018 due to scoliosis, lumbosacral spondylosis, spinal fusion, depression, anxiety, bipolar, migraines, bulging discs, severe back pain, and attention-deficit hyperactivity disorder ("ADHD").  (Tr. 18, 90-91, 96, 110).[2]  The claim was denied at the initial level on April 5, 2019, and Plaintiff requested *de novo* review by an administrative law judge ("ALJ").  (Tr. 18, 110, 115, 121, 136).  The ALJ subsequently heard the case on September 16, 2020, at which time testimony was given by Plaintiff (Tr. 18, 37-54) and by a vocational expert (Tr. 18, 54-62).  The ALJ took the matter under advisement and issued a written decision on September 28, 2020 that found Plaintiff not disabled.  (Tr. 18-31).

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to pages in the transcript are denoted by the abbreviation "Tr."

The ALJ's written decision contained the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2019.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 1, 2018 through her date last insured of December 31, 2019 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease and osteoarthritis of the lumbar spine with radiculitis; Scheuermann's kyphosis and status-post upper thoracic fusion with failed back syndrome; degenerative disc disease of the cervical spine; attention-deficit hyperactivity disorder (ADHD); a bipolar disorder; depression/a major depressive disorder; a mood disorder, not otherwise specified (nos); and an anxiety disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant: is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, crawling, and climbing on ramps and stairs, but must avoid occupations that require climbing on ladders, ropes, and scaffolds; is limited to occupations that require no more than occasional pushing or pulling with the lower extremities, to include the operation of pedals; must avoid concentrated prolonged exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, vibrations, or extreme dampness and humidity; is limited to occupations that do not require exposure to hazards, such as dangerous machinery and unprotected heights; must avoid exposure to occupations that present noise levels above level 3 (which is moderate); is limited to unskilled work activity as defined in the Dictionary of Occupational Titles, that is low stress, defined as only occasional decision making required and only occasional changes in the work setting; and is limited to occupations that require no more than occasional interaction with supervisors and coworkers, and no interaction with members of the general public.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on May 29, 1989 and was 30 years old, which is defined

as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 1, 2018, the alleged onset date, through December 31, 2019, the date last insured (20 CFR 404.1520(g)).

(Tr. 20, 21, 24, 29-30, 31). On November 30, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 4-8), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Plaintiff now asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration. (Doc. 1 at pp. 1-2; Doc. 14 at p. 13). As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full jurisdiction by a United States Magistrate Judge (Docs. 17 & 18), and the undersigned finds that the case is ripe for review pursuant to 42 U.S.C. § 405(g). Specifically, the court construes Plaintiff's supporting brief (Doc. 14) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 15) as a competing motion for summary judgment. Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.

## II.      Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Reversal is not warranted simply because the court itself would have reached a result contrary to that of the factfinder.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four.  *Id*.  At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform.  *Id*.

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[4] *McDaniel* is a Supplemental Security Income case.  Nonetheless, the same sequence applies to claims for Disability Insurance Benefits brought under Title II.  SSI cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. at 1240.

## III.    Issues on Appeal

Plaintiff raises three issues on appeal: (1) that the ALJ failed to properly evaluate the medical opinion evidence in determining Plaintiff's mental RFC; (2) that the ALJ relied on a flawed hypothetical question to the VE; and (3) that the ALJ failed to properly evaluate Plaintiff's subjective statements. (Doc. 14 at p. 2).

## IV.    Discussion

### A.    Medical Opinion of Dr. Robert Estock

Plaintiff contends that the ALJ's decision does not properly articulate how the ALJ considered the consistency and supportability of the medical opinion of Robert Estock, M.D., the State agency consultant, along with the other factors under 20 C.F.R. § 404.1520c(a) & (c) in determining the persuasiveness of the opinion. (Doc. 14 at pp. 4-5). In response, the Commissioner

contends that the ALJ considered Dr. Estock's prior administrative findings, that the ALJ identified evidence in the record that either did not support or contradicted Dr. Estock's opinion, and that the ALJ was not required to adopt verbatim each of Dr. Estock's findings into the RFC. (Doc. 15 at pp. 6-8). The Commissioner further contends that in determining Plaintiff's RFC the ALJ properly considered the entire record and not any one medical opinion. (*Id.* at p. 9).

Because Plaintiff's claim was filed on December 7, 2018 (Tr. 18), review must be guided by the revised regulations applicable to claims filed on or after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The revised regulations no longer use the phrase "treating source" but instead use "your medical source(s)." *See* 20 C.F.R. § 404.1520c; *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309 at *5 (N.D. Ala. July 22, 2021). For claims governed by the revised regulations, the agency thus "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022). "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)." *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(b)). Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources." *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618 at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, in evaluating the persuasiveness of the medical opinion(s) or prior administrative medical finding(s), "[the agency] will consider those medical opinions or prior

administrative medical findings from that medical source together" using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). "The most important factors … [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability … and consistency." 20 C.F.R. § 404.1520c(a), (b)(2); *Simon*, 2021 WL 4237618 at *3. Therefore, "the ALJ must explain how he or she considered the supportability and consistency factors." *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296 at *4 (M.D. Fla. Apr. 14, 2022). "The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors." *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(a)-(c)). "However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." *Thaxton v. Kijakazi*, No. 1:20-CV-00616, 2022 WL 983156 at *8 (M.D. Ala. Mar. 30, 2022); *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050 at *3 (M.D. Ala. June 23, 2022). Moreover, "'[t]he ALJ may but is not required to explain how he considered the other remaining factors.'" *Id.* at *4 (citation omitted); 20 C.F.R. § 404.1520c(b)(2). And the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Further, "[t]he ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion. … Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218 at *9 (M.D. Fla. Sept. 20, 2021) (citations omitted).

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can still do despite your limitations."). "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) ("A claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter is considered, it is not dispositive."); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion. The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036 at *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion."); *Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646 at *2 (M.D. Ala. Sept. 29, 2022) ("An ALJ may 'distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.'") (citation omitted). "It is 'solely the province of the [Commissioner]' to resolve conflicts in the evidence and assess the credibility of witnesses." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citation omitted).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016)

(citations omitted).  Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed.  *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted).  Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532 at *4 (S.D. Ala. Mar. 9, 2022).

In determining Plaintiff's RFC, the ALJ found Dr. Estock's prior administrative finding to be "partially persuasive overall."  (Tr. 29).  The ALJ considered Dr. Estock's opinion that Plaintiff's depression and ADHD were severe impairments that caused her no limitation in her ability to understand, remember, and apply information but that did cause her moderate limitation in her ability to interact with others, moderate limitation in her ability to concentrate, persist, and pace, and moderate limitation in her ability to adapt or to manage herself.  (Tr. 28, 98-99).  The ALJ also noted that Dr. Estock found that Plaintiff had moderate limitation in her ability to carry out detailed instructions, moderate limitation in her ability to maintain attention and concentration for extended periods, moderate limitation in her ability to complete a normal workday/workweek without interruption from psychologically based symptoms, moderate limitation in her ability to work near others without distraction, moderate limitation in her ability to get along with peers and

coworkers, moderate limitation in her ability to plan independently, and moderate limitation in her ability to respond appropriately to changes in the work setting.  (Tr. 28-29, 104-05).[5]

Dr. Estock concluded that Plaintiff could carry out simple instructions and sustain attention to familiar tasks for extended periods but that she could not carry out detailed/complex instructions.  (Tr. 105).  Dr. Estock opined that Plaintiff would need a flexible schedule and would miss work 1-2 days a month due to a depressed or anxious mood, that she would function best with her own work areas apart from others to minimize distraction, that she would need to avoid excessive workloads, quick decision-making, rapid changes, and multiple demands, and that she would benefit from regular rest breaks and a slowed pace, but that she would still be able to maintain a work pace consistent with the mental demands of competitive level work.  (Tr. 105).  Dr. Estock also opined that Plaintiff's contact with the public should be casual and non-intensive, that feedback should be supportive, tactful, and nonconfrontational, and that non-intensive interaction with coworkers would not result in distraction to others.  (Tr. 105).  Dr. Estock further

---

[5] The Social Security Administration's Programs Operations Manual System ("POMS") clarifies that these ratings in the MRFC assessment, which asks the provider to rate the presence and degree of a claimant's limitations in four functional areas, are "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment."  SSA POMS DI § 24510.060(B)(2)(a), (4), 2001 WL 1933367 (last updated Apr. 4, 2021) (emphasis omitted).  "'In this Circuit, the ALJ is not required to include the moderately limited notations from the summary conclusions section in a claimant's RFC.'" *DeJesus v. Comm'r of Soc. Sec.*, No. 6:20-CV-1685, 2022 WL 833677 at *6 (M.D. Fla. Mar. 21, 2022) (citation and internal quotation marks omitted); *Crumley v. Comm'r of Soc. Sec.*, No. 3:17-cv-973, 2019 WL 1417320 at *1 (M.D. Fla. Mar. 29, 2019) (noting that the POMS directs agency medical consultants to describe "the degree and extent" of a claimant's "capacity or limitation" in narrative format and "it therefore is the narrative written by the medical consultant, rather than the summary conclusions, that the ALJ must use as the assessment of a claimant's RFC"); *Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012) (explaining that checking boxes as "moderately limited" are only part of a worksheet that does not constitute the doctor's actual RFC assessment and only means that the claimant's capacity is impaired—not the degree and extent of the limitation--and that after checking the boxes as an aid, the doctor is then required to detail the actual RFC assessment).

opined that Plaintiff would require assistance and outside help for making plans/goals of a more long range and somewhat more complex nature, but that her capacity for making simple independent work decisions was adequate and she could be expected to respond appropriately to mild work pressure.  (Tr. 105-06).

In summarizing Dr. Estock's opinion, the ALJ noted that Dr. Estock concluded that Plaintiff "would be expected to miss 1 to 2 days of work per month due to depression/anxiety, but that she would still be able to maintain a workplace consistent with the mental demands of competitive work."  (Tr. 29).  Finding that Dr. Estock's opinion was partially persuasive overall, the ALJ explained:

> More specifically, the undersigned pays greater deference to those limitations that are consistent with the records. However, Dr. Estock included no accommodations for contact with supervisors and this lack of restriction is an underestimate of the claimant's limitation. Similarly, Dr. Estock opined that the claimant's contact with the public should be casual and non-intensive, that feedback should be tactful, supportive, and non-confrontational, that non-intensive interaction with coworkers will not result in distractions to others, and that she would miss 1 to 2 days of work per month. The undersigned finds these portions of the suggested residual functional capacity to be unsupported by the evidence and the undersigned therefore finds it unpersuasive.

(Tr. 29).

As stated above, the ALJ—and not a doctor—has the duty to determine a claimant's RFC. *Moore*, 649 F. App'x at 945.  Thus, an ALJ "is not required to base[] [the] RFC on a doctor's opinion."  *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053, 2022 WL 860190 at *6 (N.D. Ala. Mar. 22, 2022) (citing *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014)); *Vilches v. Kijakazi*, No. 3:21-CV-15, 2022 WL 11455775 at *2 (M.D. Ala. Oct. 19, 2022) ("Indeed, 'an ALJ's RFC assessment need not match or mirror the findings or opinions of any particular medical source ... because the reasonability of assessing the RFC rests with the ALJ.'") (citation and internal quotation marks omitted).  While state agency medical or psychological

consultants are considered experts in Social Security disability evaluation, "[a]dministrative law judges are not required to adopt any prior administrative findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate."  20 C.F.R. § 404.1513a(b)(1).  The regulations further provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a).  "Thus, an ALJ need not adopt every part of an opinion that the ALJ finds persuasive."  *Rivera Misla v. Comm'r of Soc. Sec.*, No. 6:20-CV-1076, 2021 WL 2417084 at *2 (M.D. Fla. June 14, 2021); *Vilches*, 2022 WL 11455775 at *3 ("Moreover, the ALJ provides an RFC by considering the entirety of the evidence rather than a single opinion—not simply regurgitating in the RFC from even persuasive medical opinions, and some slight deviation may be appropriate.").  *See also Szoke v. Kijakazi*, No. 8:21-CV-502, 2022 WL 17249443 at *9 n.12 (M.D. Fla. Nov. 28, 2022) (collecting cases).  Nor is an ALJ "compelled to 'specifically refer to every piece of evidence in his decision.'"  *Szoke*, No. 8:21-CV-502, 2022 WL 17249443 at *9 (citation omitted).

Plaintiff argues that in rejecting Dr. Estock's opinion that her feedback should be tactful, supportive, and non-confrontational and that she would miss 1 to 2 days of work per month on the basis that such restrictions were unsupported by the evidence, the ALJ offered no explanation as to how the opinion was considered and that the ALJ's single sentence analysis of Dr. Estock's opinion was insufficient and failed to comply with the requirements of 20 C.F.R. § 404.1520c. (Doc. 14 at pp. 4-5).  While the ALJ found that Dr. Estock's opinion was "partially persuasive overall," the ALJ was under no obligation to adopt every part of Dr. Estock's opinion.  "The regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise

find persuasive." *Guth v. Comm'r of Soc. Sec.*, No. 2:21-CV-106, 2022 WL 8211404 at *9 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted*, No. 2:21-CV-106, 2022 WL 4115784 (M.D. Fla. Sept. 9, 2022) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)).  *See also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108, 2019 WL 4686800 at *8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source ... because the responsibility of assessing the RFC rests with the ALJ."); *Tolbert*, 2022 WL 4591646 at *2 ("There is no requirement that an ALJ include every limitation from a medical opinion verbatim in an RFC determination or specifically address every aspect of an opinion or every piece of evidence in the record."); *Powell v. Kijakazi*, No. CV 321-066, 2022 WL 4000719 at *5 (S.D. Ga. Aug. 9, 2022), *report and recommendation adopted*, No. CV 321-066, 2022 WL 3970838 (S.D. Ga. Aug. 31, 2022) ("[F]inding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC."); *Williamson*, 2022 WL 2257050 at *3.

The record shows that the ALJ properly applied the regulations in considering the persuasiveness of Dr. Estock's administrative findings under 20 C.F.R. § 404.1520c.  The ALJ noted that although Dr. Estock observed that Plaintiff had moderate limitation in her ability to interact with others, Dr. Estock included no accommodations for contact with supervisors, which the ALJ found was an underestimate of Plaintiff's limitations.  (Tr. 28-29, 99, 105).  In fashioning Plaintiff's RFC, the ALJ limited her to no more than occasional interaction with supervisors. (Tr. 24).  The ALJ also found that Dr. Estock's opinion that Plaintiff's contact with the public should be casual, non-intensive, that feedback should be tactful, supportive, and non-confrontational, that non-intensive interaction with coworkers would not be a distraction to others, and that she would miss 1 to 2 days of work per month was unsupported by the record evidence.

14

(Tr. 29).  In doing so, the ALJ discussed elsewhere in the decision evidence that either supported or contradicted Dr. Estock's opinion.[6]

In assessing the evidence in relation to her mental impairments, the ALJ noted that Plaintiff took her medication and attended her appointments without reminders and that at the ALJ hearing she was a good historian with no serious lapses in memory, comprehension, or concentration. (Tr. 22, 45-57, 217, 219).  The ALJ noted that Plaintiff resided with friends in the past but was now living with her parents, that she left her home regularly and was able to drive, that she shopped in stores for food and for other necessities, that she tried to attend church weekly, that she left her home to run errands, that she was able to travel alone or with the accompaniment of others, that she addressed her personal care needs, and that she belonged to an internet support group for those who struggle to cope with pain.  (Tr. 23, 25, 27, 46-49, 215, 218-19).  The ALJ further noted that Plaintiff interacted well with authority figures and that she had never been fired due to interpersonal issues.  (Tr. 23, 221).

The ALJ also considered Plaintiff's psychiatric examination records, stating that the medical evidence of record did not document any serious issues regarding Plaintiff's interacting with her treatment providers and that she interacted appropriately at the hearing.  (Tr. 23, 45-57). The ALJ cited Plaintiff's May 2018 examination showing that her thought process was logical, that she was not delusional, that she showed no signs of hallucinating, that her mood/affect was appropriate, that she was neither homicidal nor suicidal, that her memory was good, and that she

---

[6] "'[I]t is proper to read the ALJ's decision a whole, and ... it would be a needless formality to have the ALJ repeat substantially similar factual analyses' at multiple points in the decision." *Pariseau v. Comm'r of Soc. Sec.*, No. 2:20-CV-01224, 2022 WL 4277295 at *7 n.5 (N.D. Ala. Sept. 15, 2022) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004)); *Bradford v. Sec'y of Dep't of Health & Human Servs.*, 803 F.2d 871, 873 (6th Cir. 1986) (explaining that an ALJ's decision should be considered as an "entire opinion").

remained well oriented.   (Tr. 27, 687).   The ALJ noted that throughout the end of 2018 Plaintiff's mental status examination findings remained similarly benign.   (Tr. 27, 680-86). The ALJ cited records from February 2019 that showed while Plaintiff reported increased impulsivity and anxiety, her insight/judgment was normal, her thought process/content was logical, she was not delusional, and she displayed no homicidal/suicidal ideation.   (Tr. 27, 679). The ALJ also cited records from March 2019 demonstrating that Plaintiff's mood was better and her psychological examination findings were typically normal.   (Tr. 27, 745-46).   The ALJ stated that in June and July 2019 Plaintiff's mental status examination findings were generally normal and that throughout late 2019 and 2020, but/for intermittent mania, Plaintiff's judgment/insight was usually within normal limits, her thought processes/content was typically normal, she was neither homicidal nor suicidal, and she explained that during this period her medications were working "fine."   (Tr. 27, 795-801, 803-13).   The ALJ noted that in February 2020 Plaintiff was well oriented, her mood and affect were appropriate, and her recent and remote memory were intact.   (Tr. 27, 817).   The ALJ concluded that although the medical evidence showed that Plaintiff's mental health conditions were ongoing and that her symptoms continued, Plaintiff was not precluded from completing a range of simple work.   (Tr. 27).

Limiting Plaintiff to unskilled work accounted for Dr. Estock's opinion that Plaintiff could carry out simple instructions, make simple independent work decisions, and make plans/set goals of an immediate nature for carrying out simple activities.   (Tr. 24, 104-05).   "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."   20 C.F.R. § 404.1568(a).   Unskilled work generally requires the following: (1) "[u]nderstanding, remembering, and carrying out simple instructions"; (2) "[m]aking judgments that are commensurate with the functions of unskilled work--i.e., simple work-related

16

decisions"; (3) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (4) "[d]ealing with changes in a routine work setting." SSR 96-9p, 1996 WL 374185 at *9 (S.S.A. July 2, 1996); *see also* SSR 85-15, 1985 WL 56857 at *4 (S.S.A. 1985) ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.").

As to Dr. Estock's opinion that Plaintiff would be expected to miss 1 to 2 days of work per month, the treatment records cited by the ALJ did not support such a finding. Nor did Plaintiff cite to any treatment records that supported that she would specifically miss 1 to 2 days of work per month because of her mental issues. Plaintiff also argues that the ALJ failed to address Dr. Estock's opinion that she would function best with her own work areas apart from others to minimize distraction and that she would benefit from regular rest periods and a slowed work pace. (Doc. 14 at p. 7). However, Dr. Estock did not state that Plaintiff required her own work areas apart from others to minimize distraction or regular rest periods and a slowed work pace—only that she would "function best" or "would benefit" from these suggestions. Thus, the ALJ did not err by leaving out those limitations. *See Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 796 (11th Cir. 2019) ("[State agency medical consultant] said only that [plaintiff] would function 'best' in a well-spaced work setting; he did not say that she required a well-spaced work setting to function at all. Thus, the ALJ did not err by leaving out that limitation."). Moreover, Dr. Estock stated unequivocally that Plaintiff, nevertheless, "could tolerate ordinary work pressures" and would "still be able to maintain a work pace consistent with mental demands of competitive level work." (Tr. 105).

Based upon the foregoing, the ALJ's decision clearly indicates that the ALJ properly evaluated the supportability and consistency of Dr. Estock's opinion and that the ALJ met the articulation requirement of 20 C.F.R. § 404.1520c(b)(2).  The ALJ considered Dr. Estock's opinion along with the record as a whole in determining Plaintiff's RFC.  Accordingly, the court finds that the ALJ's evaluation of Dr. Estock's opinion was supported by substantial evidence.

### B.    Hypothetical Question to VE

Plaintiff contends that the ALJ's hypothetical question did not adequately account for her moderate limitations in concentrating, persisting, or maintaining pace.  (Doc. 14 at p. 9).  Plaintiff asserts that, although the ALJ found that she had moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself, the accepted hypothetical to the VE only limited her mentally to unskilled work that is low stress (defined as only occasional decision-making required and only occasional changes in the work setting) with no more than occasional interactions with supervisors and co-workers and no interactions with the general public.  (*Id.*, citing Tr. 23, 24, 59).  Plaintiff argues that those limitations do not account for the restrictions found in her ability to concentrate over a period of time or maintain a particular work pace over the course of a workday or workweek nor describe limitations in her ability to persist at tasks.  (*Id.*).

The ALJ's rating Plaintiff as having moderate limitation in concentrating, persisting, or maintaining pace was made pursuant to the psychiatric review technique ("PRT") used in assessing mental impairments.  (Tr. 23-24).  *See* 20 C.F.R. § 404.1520a(c)-(d).  As the ALJ explained:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The

following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 24).  *See* 20 C.F.R. §§ 404.1520(a)(4), 404.1520a(b)-(d).  "The ALJ is required to incorporate the results of the special technique into her findings and conclusions," but the technique "is separate from the ALJ's evaluation of the claimant's RFC assessment, the latter of which is an assessment of the claimant's ability to do work despite his impairments.  The mental RFC assessment is a more detailed assessment of the claimant's functionality."  *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (internal citations omitted).

"[A]n ALJ's hypothetical restricting [a] claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies."  *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872 (11th Cir. 2011).  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations."); *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950-51 (11th Cir. 2013) ("[L]imiting the hypothetical questions to include only unskilled work sufficiently accounts for the claimant's limitations in maintaining his concentration, persistence, or pace where the medical evidence demonstrates that the claimant can engage in simple, routine tasks or unskilled work despite his limitations."). "While impairments in concentration, persistence, or pace may be explicitly accounted for in a hypothetical, restricting a claimant to 'simple work,' 'simple and routine tasks,' or 'unskilled work' is sufficient when the medical evidence of record indicates that a claimant retains the ability to work despite those limitations."  *McCormick v. Colvin*, No. 3:15CV458, 2016 WL 3671421 at

*4 (M.D. Ala. July 8, 2016) (citing *Lee v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 539, 541 (11th Cir. 2014) ("The ALJ adequately accounted for all of [the plaintiff's] impairments in the hypothetical posed to the VE because he implicitly accounted for [the plaintiff's] limitations in concentration, persistence, and pace when he imposed a limitation of simple work.")); *Jackson v. Kijakazi*, No. 1:20-CV-00039, 2021 WL 4472597 at *6 (M.D. Ala. Sept. 29, 2021) ("[L]imiting the hypothetical to 'simple work' or 'unskilled work' sufficiently, albeit implicitly, accounts for an impairment in concentration when the medical evidence indicates that a claimant retains the ability to work despite the limitation."); *Jacobs*, 520 F. App'x at 951 (finding limitation of "one to three step non-complex tasks" sufficiently accounted for moderate limitation in concentration, persistence, or pace); *Washington v. Soc. Sec. Admin., Comm'r*, 503 F. App'x 881, 883 (11th Cir. 2013) (finding limitation "to performing only simple, routine repetitive tasks with up to three-step demands, and only occasional changes in the work setting, judgment, or decision making" was sufficient to account for moderate limitation in maintaining concentration, persistence, or pace); *Scott v. Comm'r of Soc. Sec.*, 495 F. A'ppx 27, 29 (11th Cir. 2012) (finding that because medical evidence showed plaintiff could engage in simple, routine tasks or unskilled work despite moderate limitations in concentration, persistence, or pace, the hypothetical question posed to VE, including only unskilled work was sufficient); *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) (because medical evidence showed that plaintiff could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, limiting plaintiff to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace).

Here, in making the determination that there were jobs in the national economy that Plaintiff could perform, the ALJ relied upon the testimony of a VE. (Tr. 30-31, 54-62). The VE's

testimony was based upon the following hypothetical, which stated in part:

> She would be limited to unskilled work activity as defined in the Dictionary of Occupational Titles, that is low stress, defined as only occasional decision making required and only occasional changes in the work setting, and limited to occupations which require no more than occasional interaction with supervisors and coworkers and no interaction with members of the general public. Could such a hypothetical claimant perform her past work?

(Tr. 59).

Although the hypothetical did not explicitly refer to Plaintiff's moderate limitation in her ability to maintain concentration, persistence, or pace, it did limit Plaintiff to performing "unskilled work" that involved low stress, only occasional decision making, and only occasional changes in the work setting.  (Tr. 59).  Based upon the case authority cited above, those restrictions were sufficient, so long as the medical evidence indicated that Plaintiff retained the ability to work despite the limitation in her ability to maintain concentration, persistence, or pace.  *See Jacobs*, 520 F. App'x at 950-51; *Jarrett*, 422 F. App'x at 872; *Washington*, 503 F. App'x at 883; *Scott*, 495 F. A'ppx at 29; *Whitaker v. Colvin*, No. 2:12CV812, 2013 WL 5493200 at *4 (M.D. Ala. Oct. 1, 2013) (finding that because the ALJ's hypothetical questions to the VE expressly limited plaintiff to work that did not involve complex or detailed instructions and expressly limited her contact with others, and because the VE limited plaintiff to unskilled work, the ALJ implicitly accounted for moderate limitations in plaintiff's social functioning and concentration, persistence and pace).

The record reflects that in determining Plaintiff's mental RFC the ALJ considered Plaintiff's mental status examinations that consistently showed unremarkable findings such as intact memory, normal logical thought processes, and fair to good attention and concentration, which supported a finding that Plaintiff could perform simple, unskilled work.  (Tr. 27, 679-87, 745-46, 795-801, 803-13, 817).  The ALJ also considered Plaintiff's daily activities, which

included the ability to drive, use a computer, maintain finances, and complete multiple chores. (Tr. 22, 23, 27, 49, 217-19).  The court thus finds that substantial evidence supported the ALJ's conclusion that Plaintiff could perform "simple" or "unskilled work" "that is low stress, defined as only occasional decision making required and only occasional changes in the work setting," despite her moderate limitation in concentration, persistence, or pace.  *See Jarrett*, 422 F. App'x at 872 (finding that ALJ's hypothetical that plaintiff "could follow simple instructions" and "complete simple tasks" sufficiently accounted for plaintiff's limitations in concentration, persistence, and pace because, despite these limitations, the medical evidence in the record demonstrated that plaintiff retained the ability to follow simple instructions and complete simple tasks); *Jackson*, 2021 WL 4472597 at *6 (finding records, along with plaintiff's daily activities, constituted substantial evidence supporting the conclusion that plaintiff could perform simple tasks despite his moderate limitation in concentration).

While Plaintiff notes the VE testified that there were no jobs available for an individual who would be off task more than 30% of the work and would miss one or two days of work per week, (Doc. 14 at p. 9, citing Tr. 61-62), the ALJ did not find such limitations supported by the record (Tr. 24-30), and the ALJ was "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported."  *Crawford*, 363 F.3d at 1161; *Zoslow v. Comm'r of Soc. Sec.*, 778 F. App'x 762, 764 (11th Cir. 2019); *Bouie*, 226 F. App'x at 895 ("Because the ALJ posed hypotheticals consistent with the RFC, which was supported by substantial evidence, the ALJ did not err in posing the hypotheticals.").  Although an "'ALJ may pose a hypothetical with more restrictive limitations to the VE, even if the ALJ determines that the more restrictive limitations are not supported by the record,'" the ALJ "is not bound by the hypothetical with the most restrictive limitations if the record does not support those limitations."  *Jackson*, 2021 WL

4472597 at *6 n.7 (citation omitted).   Because the ALJ's hypothetical question adequately accounted for her moderate limitation in concentrating, persisting, or maintaining pace, Plaintiff's claim of error fails.

### C.     Plaintiff's Subjective Statements

Plaintiff argues that the ALJ's evaluation of her subjective statements regarding her mental impairments was not supported by substantial evidence.  (Doc. 14 at p. 12).  In determining whether a claimant is disabled, the claimant's symptoms, including pain, are considered to the extent they are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a).  The Commissioner will consider a claimant's statements about his or her symptoms and any description that the claimant's medical sources or nonmedical sources may provide about how the symptoms affect the claimant's activities of daily living and ability to work. *Id*.  However, a claimant's statements about pain or symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.  *Id*.; SSR 16-3p, 2017 WL 5180304 at *2 (S.S.A. Oct. 25, 2017); *Turner v. Kijakazi*, No. 1:19-CV-774, 2021 WL 3276596 at *9 (M.D. Ala. July 30, 2021) ("[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms.").  The regulations set out a two-step process for the evaluation of subjective complaints.  *Id*.; SSR 16-3p, 2017 WL 5180304 at *3.  To establish a disability based on testimony of symptoms, the claimant must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms, or (2) evidence establishing that the objectively determined medical condition could be reasonably expected to give rise to the alleged symptoms.  *Carroll v. Soc. Sec. Admin., Comm'r*, No. 6:21-CV-00014, 2022 WL 3718503 at *12 (N.D. Ala. Aug. 29, 2022) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)); 20 C.F.R. § 404.1529(a)-(b); SSR 16-3p, 2017 WL 5180304 at *3.

"Consideration of a claimant's symptoms therefore involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain." *Mixon v. Kijakazi*, No. 8:20-CV-2991, 2022 WL 2816964 at *3 (M.D. Fla. July 19, 2022); 20 C.F.R. § 404.1529(a)-(b); SSR 16-3p, 2017 WL 5180304 at *2-3.  Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's symptoms is established, the ALJ must then consider all of the evidence in the record to evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's capacity for work.  SSR 16-3p, 2017 WL 5180304 at *3-4; 20 C.F.R. § 404.1529(a)-(c); *Stromgren v. Kijakazi*, No. 3:21-CV-908, 2022 WL 1205347 at *5 (N.D. Fla. Mar. 11, 2022), *report and recommendation adopted*, No. 3:21-CV-908, 2022 WL 1204519 (N.D. Fla. Apr. 22, 2022).  In doing so, SSR 16-3p and the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304 at *8-9; 20 C.F.R. § 404.1529(c)(3).

The ALJ will also consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between claimant's statements and the rest of the evidence, including the history, signs and laboratory findings, and statements by treating and non-treating sources or other persons about how the symptoms affect the claimant.  20 C.F.R. § 404.1529(c)(4). "However, Eleventh Circuit case law does not require an ALJ to enumerate every factor in every

decision." *Alexander v. Comm'r of Soc. Sec. Admin.*, No. 6:20-CV-01862, 2022 WL 4291335 at *5 (N.D. Ala. Sept. 16, 2022) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (concluding that the ALJ need not cite to "particular phrases or formulations" but must provide reasons that would enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole)).  If the ALJ discredits a claimant's subjective statements, the ALJ "must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62; *Patterson v. Kijakazi*, No. 8:21-CV-359, 2022 WL 3028058 at *3 (M.D. Fla. Aug. 1, 2022).  That is, "[w]here proof of a disability is based upon subjective evidence and a credibility determination is a critical factor in the decision, if the ALJ discredits the claimant's testimony as to his subjective symptoms, the ALJ must either explicitly discredit such testimony or the implication from the ALJ's opinion must be so clear as to amount to a specific credibility finding." *Martinez v. Comm'r of Soc. Sec.*, No. 21-12116, 2022 WL 1531582 at *2 (11th Cir. May 16, 2022) (citing *Foote*, 67 F.3d at 1562). "Subjective complaint credibility is the province of the ALJ." *Williams v. Kijakazi*, No. 2:20-CV-277, 2022 WL 736260 at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)).

The record reflects that the ALJ sufficiently addressed Plaintiff's subjective statements in accordance with the regulations.  The ALJ considered the entire medical record in evaluating Plaintiff's subjective statements.  The ALJ noted that Plaintiff's psychiatric examinations findings were typically normal, which included findings of intact memory, normal to fair attention and concentration, logical thought processes, appropriate mood/affect, and normal insight and judgment, and that her medications were working "fine."  (Tr. 22, 26-27, 679-687, 745-46, 795-801, 803-13, 817).  The ALJ also properly considered Plaintiff's daily activities, which included the ability to drive, shop, run errands, address her personal care needs, attend church, use a

computer, maintain finances, complete multiple chores, and interact with others.  (Tr. 22, 23, 27, 49, 217-19).  *See* 20 C.F.R. § 404.1529(c)(3)(i) (stating that an ALJ will consider a claimant's daily activities in evaluating the limiting effects of the claimant's impairments and related symptoms); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) ("Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability, that does not mean it is improper for the ALJ to consider a claimant's daily activities at all.") (internal citation omitted); *Ochmanski v. Kijakazi*, No. 21-24429-CIV, 2023 WL 2283212 at *18 (S.D. Fla. Feb. 2, 2023), *report and recommendation adopted*, No. 21-24429-CIV, 2023 WL 2266245 (S.D. Fla. Feb. 28, 2023).  The ALJ stated that "while none of [Plaintiff's] activities [of daily living] [wa]s dispositive, taken together and considered in conjunction with the above medical evidence of record, they suggest[ed] that [Plaintiff] could perform work within the [RFC's] parameters on a sustained and continuous basis."  (Tr. 27).

"[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms."  *Turner*, 2021 WL 3276596 at *9; 20 C.F.R. § 404.1529(a) ("[S]tatements about [a claimant's] pain or other symptoms will not alone establish that [a claimant is] disabled.").  As explained above, the court finds that the ALJ properly evaluated Plaintiff's subjective complaints in light of the evidence of record and formulated appropriate RFC restrictions to accommodate the limitations arising from her mental impairments.  Credibility determinations are the province of the ALJ, *Mitchell*, 771 F.3d at 782, and the ALJ sufficiently cited evidence in the record for finding that Plaintiff's statements were not entirely consistent with the record as a whole.  *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (footnote omitted) (The appropriate question for a reviewing court "is not ... whether [the] ALJ could have reasonably credited [the

claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").  Because the ALJ properly considered the objective medical evidence along with the other evidence in the record in accordance with 20 C.F.R. § 404.1529(c)(1)-(3), the court finds that the ALJ's evaluation of Plaintiff's subjective statements is supported by substantial evidence.

## V.     Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 14) is due to be **DENIED**;

- that the Commissioner's motion for summary judgment (Doc. 15) is due to be **GRANTED**; and

- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

**DONE** this the 15th day of September 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**